JAMES LEE, Admr., *vs.* RELIANCE MILLS COMPANY.

PROVIDENCE—FEBRUARY 21, 1900.

PRESENT : Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Negligence.   Burden of Proof.   Presumptions.*

The plaintiff's intestate was employed by the defendant to tend and run certain grinding-machines.   On the morning of the accident, immediately after he had gone to work, a noise was heard by a fellow-workman, and deceased was found unconscious and bruised, his head and one hand on or in the pulley connected with the belt that furnished power to the machine.   The belt was broken.   Deceased died the same day without

having recovered consciousness. No one saw the accident, and no direct proof was offered as to the cause of death.

After nonsuit of the plaintiff on the ground of lack of proof as to the cause of the injury and death, and of due care on the part of the deceased, on petition for new trial:

*Held,* no error.

(2) *Presumption of Due Care.*

*Held,* further, that even if the plaintiff was entitled to a presumption under the proof that deceased was in the exercise of due care at the time of the accident, in the absence of proof as to the cause of the injury it would not establish a case on which he could go to the jury.

TRESPASS ON THE CASE for negligence. The facts are stated in the opinion. For previous opinion in this case see 21 R. I. 322. Heard on petition of plaintiff for a new trial. New trial denied.

TILLINGHAST, J. The material facts which appear from the testimony in this case may be summarized as follows:

Frank Lee, the plaintiff's intestate, was employed by the defendants to tend and run certain grinding-machines used for grinding grain at their mill. His duties consisted in starting and stopping the machines and in keeping the hoppers, through which the grain was fed to the grinding parts of the machines, free from obstructions which would tend to choke them up. He had been employed in this capacity for about five years. On the morning of October 4, 1897, just as the mill was starting up, Lee went about his work as usual. Immediately afterwards, Luke Quigley, who worked on the same floor with Lee, heard a noise, probably caused by the breaking of the belt on the machine where Lee was at work, and instantly gave the bell to stop the engine. About half a minute afterwards, as he testifies, he found Lee in an unconscious condition, with his head and left hand on or in the pulley, which was still moving, and his right hand in the hopper. There was a slight cut on the left side of his head, there was blood on his face, and his left hand was bruised, twisted, and bleeding. He never recovered consciousness, and died the same day at the Rhode Island Hospital. The belt which ran the machine where he was working was found

to be broken, and was lying on the floor in the room below. It was a six-inch double belt, made of rawhide and fastened together with copper rivets, and these were found to have been pulled out, and the break in the belt was at this place. As we understand the testimony, although it is not very explicit upon this point, the belt came up through the floor and passed over the pulley, which is near the hopper, and then back again through the floor, so that only a very small section of the belt would be above the surface of the floor where the deceased was working. The testimony shows that occasionally the grinder gets clogged or choked, causing it to stop, and that in such case the person who is tending it puts his hand into the hopper down to the point where the feed goes through, removes the obstruction, and thereby causes the grinder to start up again. The regular orders were never to start the grinders running until the full speed was on.

The deceased was twenty-three years of age. No one witnessed the accident or undertakes to tell how it happened, and no proof was offered as to the extent of his injuries or as to the cause of his death, except as aforesaid. It was agreed, however, by counsel at the commencement of the trial that the injuries received at this time were the cause of his death.

At the close of the plaintiff's testimony the court, on motion of the defendant's attorney, granted a nonsuit on the ground of lack of proof as to the cause of the injury and death of deceased, and also for lack of proof of due care on the part of deceased. The plaintiff excepted to the ruling, and now moves for a new trial, on the ground that the ruling was erroneous. He contends that the testimony offered entitled him to go to the jury, in that it shows negligence on the part of defendants, as alleged in his declaration, in not providing a proper safeguard for the belt in question, as required by Gen. Laws, R. I. cap. 68, § 6 ;[1] and also that the testimony shows the exercise of due care on the part of Lee. His first

---

[1] Gen. Laws R. I. cap. 68, § 6 : "All belting and gearing shall be provided with proper safeguard."

claim is, in short, that the evidence shows that Lee was engaged in cleaning the hopper when the power belt which operated the machine broke and struck him on the left side of his head and body so that he was hurled violently against a portion of the machinery, and that his left hand was drawn into the pulley over which said belt was running.

His second claim is that the testimony shows that at the time of the accident Lee was engaged in clearing the machine, and that his exclusive attention was engaged therein, and that while so engaged he was "*struck or caught*" by the belt which ran the machine, and hurled violently against the machine and fatally injured; and also that the testimony shows the exercise of due care on his part at the time of the injury. And, further, that the belt and shafting were wholly unguarded, and that by this reason Lee was "caught or struck" by the belt.

(1) We fail to see that either of the theories advanced as to the manner in which the injuries were received is sustained by the evidence. They rest upon conjecture and not upon testimony. Take the first theory, namely, that while operating the machine he was struck by the broken belt and hurled violently against some portion of the machinery. What basis is there for it? Mainly this: the belt was found to be broken, and he was probably near to it when it parted, and there were marks upon his person showing that in some way he had been injured. But the belt came through the floor from below, and, passing over the pulley, which was from twelve to twenty inches above the floor, returned, as aforesaid; so that the natural inference would seem to be that when it broke it would immediately fall to the room below, where it was, in fact, found just after the accident. If he was caught and hurled violently against the machinery, how did it happen that when found he was about in his usual place, with his right hand in the hopper? But even assuming that he was struck by the belt, as claimed, where was he and what was he doing at the time? Was the belt out of order, and was he attempting to interfere with it in any way? Did he start the grinder in operation before the full speed was on, and

thereby bring an unusual strain upon the belt and thus cause it to break? Did he accidentally fall against the pulley when the belt broke? These and many other questions which might be asked show that the accident did not necessarily happen in either of the ways relied on by the plaintiff, and also that it is quite impossible to tell with any considerable degree of certainty how it did happen. If we take the plaintiff's second theory, namely, that while clearing the machine Lee was "struck or caught" by the belt and hurled violently against the machine and fatally injured, it is at once apparent that this, too, is merely a conjecture or guess. Indeed, counsel practically admits that this is so when he argues that deceased was *either* "struck or caught" by the belt. But can it be properly contended that even if it appears that he was either struck or caught by the belt and thereby received injuries which resulted in his death, the defendants can be held responsible therefor? We think not. It must also be made to appear that they failed to discharge some duty which they owed to the deceased, and this is not shown in the testimony. It is true that the plaintiff alleges in his declaration that the belt and shafting were not properly guarded, as required by statute, but the only evidence offered in support of this allegation was by the witness Luke Quigley, who said, in answer to the question "Was there any protection to that belt?" "Same as there is to-day." But what that was does not appear. But even assuming, for the purposes of the argument, that the belt and shafting were not properly guarded, and that the defendants failed in discharging their duty to Lee in this regard, it does not appear that the accident happened on this account, or that it would not have happened if the belt had been properly guarded. For, as already indicated, it does not appear how it happened.

(2)     Conceding, then, as claimed by plaintiff's counsel, that under the law as laid down by this court in *Judge* v. *Narr. Elec. Lighting Co.*, 21 R. I. 128 the plaintiff was entitled to a presumption under the proof that deceased was in the exercise of due care at the time he was injured, still, as it

does not appear that defendants had not discharged their duty towards him, the case was not made out.

Petition for new trial denied, and case remitted for judgment.

*John W. Hogan,* for plaintiff.

*Walter B. Vincent,* for defendant.